## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEBASISH DUTT, individually and on behalf of all others similarly situated, | Civil Action No. _____ |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| WINS FINANCE HOLDINGS, INC., JIANMING HAO, RENHUI MU, AND JUNFENG ZHAO, | |
| Defendants. | <u>JURY TRIAL DEMANDED</u> |

Plaintiff Debasish Dutt ("Plaintiff"), by his attorneys, submits this Class Action Complaint against the Defendants named herein. Plaintiff alleges, upon information and belief based upon, *inter alia*, the investigation made by his attorneys, except as to those allegations that pertain to the Plaintiff himself, which are alleged upon knowledge, as follows:

### NATURE AND SUMMARY OF THE ACTION

1.       This is a securities class action on behalf of all persons who purchased or otherwise acquired the securities of Wins Finance Holdings, Inc. ("Wins" or the "Company") between October 29, 2015, and March 29, 2017, inclusive (the "Class Period"), against Wins and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 (the "Exchange Act").  In particular, this matter arises out of false and misleading statements related to Wins' business, operational and compliance policies and practices.

2.       Wins is a diversified investment and asset management company listed on the NASDAQ. The Company is an integrated lending solution provider serving small-and-medium sized enterprises ("SMEs") in Jinzhong City, Shanxi Province and Beijing, China. The Company offers principal products and services to its customers, which primarily constitute SMEs, such

as financial guarantees, financial leasing, and financial advisory and agency services. In its direct loan business, it provides short-term loans to the borrowers and generates interest income.  In its guarantee business, it acts as a guarantor to borrowers applying for short-term direct loans with other lenders and generate fee income.

3.      On October 28, 2015, Wins announced the completion of its previously announced business combination to be acquired by Sino Mercury Acquisition Corp. ("Sino"), allowing Wins to become a publicly traded company.  Individual Defendant Jianming Hao ("Hao"), who was Chairman and Chief Executive Officer ("CEO") of Sino, became the CEO of Wins, stating in reaction to the transaction, *inter alia*, that: "I'm confident that Wins' strong team with experience in the financial markets, combined with the experience of Sino Mercury's team in growing global businesses and identifying new platform opportunities, will ***provide significant value for our stockholders***." Emphasis added.

4.      Thereafter, Defendants made numerous materially false and misleading statements and omitted material facts concerning Wins' business, operational and compliance policies, and particularly, the Company's projected earnings, valuation, and future business operations stating for example:

- "Wins' strong team with experience in the financial markets, combined with the experience of Sino Mercury's team in growing global businesses and identifying new platform opportunities, will provide significant value for our stockholders;"

- "[T]he Company's disclosure controls and procedures were effective and designed to ensure that all material information relating to the Company required to be included in reports filed or submitted under the Securities Exchange Act of 1934 is recorded, processed, summarized and reported within the time periods specified in the rules and forms of the Securities and Exchange Commission (the "SEC") and to ensure that information required to be disclosed is accumulated and communicated to the Company's management;"

- "[O]ur expansion into this sector will provide positive returns for the Company, and believe that our efforts will lead us to become recognized as a mature, professional, and competitive lease financing provider;"

- "2015 was a transformative year for Wins Finance highlighted by the business combination with Wins Finance Group Limited and our continued listing on NASDAQ;"

- "We also expect our pipeline of leasing opportunities to increase during in the first half year, with associated revenues to begin in the second half of 2016;" and

- The Company's principal executive offices were located at 7 Times Square 37th Floor New York, New York.

5.      Defendants, however, could not maintain their ruse concerning the Company's business prospects indefinitely.  On December 9, 2016, *SeekingAlpha.com* published an article entitled "Wins Finance Holdings is Overvalued: 75% Downside" which criticized the Company's valuation and trading levels as "absurd" and noted "the management team has a track record of shareholder destruction."  The article further revealed that Defendant Hao had previously been accused of market manipulation, stating:

> ***If History is an indicator, WINS will end up like Mr. Hao's previous venture, Deyu Agriculture Corp., a now defunct reverse merger***.
>
> Between 2010 and 2013, Mr. Hao served as the CEO of Deyu Agriculture Corp., a vertically integrated producer, processor, marketer and distributor of organic and other agricultural products made from corn and grains. Like many companies with Chinese operations, Deyu went public via a <u>reverse merger</u> with a company called Eco Building International.
>
> Further digging illuminated the fact that ***Deyu was being promoted by a third-party stock promotion company called Lebed Biz LLC, who was being compensated $20,000 by another firm called Wall Street Grand for a one month Deyu investor relations contract***.

Emphasis added.

6.      On this news, the Company's stock price declined approximately 36 percent from a closing price of $172.51 on December 8, 2016 to close at $110.62 per share on December 12,

3

2016.

7.       Shortly thereafter, on February 2, 2017, *SeekingAlpha.com* published a second article entitled "Potential Chinese Fraud – Wins Finance Holdings" which criticized the Company's management and their histories of involvement in past incidence of securities fraud. For example, the article revealed that: (i) Defendant Hao had previously paid several third-party penny stock promotion companies to promote his past companies; and (ii) the Company's Chief Financial Officer ("CFO") and Individual Defendant Junfeng Zhao ("Zhao") had previously served as the financial controller of Agria Corporation which was delisted from the New York Stock Exchange after it was learned that various executives and intermediaries were manipulating the stock to keep it in compliance.

8.       In reaction to the article, the Company's stock price declined approximately 10 percent from a closing price of $345.00 on February 2, 2016 to close at $309.99 per share on February 6, 2016.

9.       This *SeekingAlpha* article was soon followed by a March 30, 2017 article on *Bloomberg* entitled "This Chinese Stock Soared 4,500% on Nasdaq and No One Knows Why." The article revealed that Wins' purported Times Square headquarters were non-existent, stating: "[t]he mystery begins on the 37th floor of a shiny Times Square skyscraper. That's where Wins's U.S. headquarters are located, according to Securities and Exchange Commission filings. But there aren't any signs of the business. Instead, the floor is occupied by Forefront Capital Advisors, a financial-services firm founded by Bradley Reifler, who used to be on the board of Wins."

10.      The article also revealed that the Company's largest shareholder, Freeman FinTech Corp., had previously been accused of and sanctioned for market manipulation, stating: "[t]en former directors face possible sanctions by the local regulator over a failed 2011 deal that

cost the firm HK$76.8 million ($9.9 million). Chairman Zhang Yongdong, who was censured by

China's market regulator in 2015 for allegedly manipulating shares of a different company,

resigned from his role at Freeman in January, after the Hong Kong Stock Exchange said he was

unfit to serve as a director."

11.     Also on March 30, 2017, *SeekingAlpha* published a third article entitled "Wins

Finance – Active SEC Investigation and Manipulation of A Russell Index."  The article explosively

revealed, *inter alia* that: (i) a FOIA request for information on any investigations into the Company

came back with a "7(a) exemption," which means that releasing any information the United States

Securities and Exchange Commissions ("SEC") had collected on Wins would be expected to

interfere with law enforcement proceedings; and (ii) the Company had misrepresented its U.S.

headquarters to gain inclusion on the Russell indexes, and would face imminent exclusion from

that index after updating its principal executive offices to China in its SEC filings.

12.     In reaction to these articles, the Company's stock price declined approximately 48

percent from a closing price of $280.60 on March 29, 2017 to close at $144.99 on March 31, 2017.

## JURISDICTION AND VENUE

13.     The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the

Exchange Act, 15 U.S.C. § 78j(b) and § 78t(a), and Rule 10b-5 promulgated thereunder by the

SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1331 and § 27 of the Exchange Act, 15 U.S.C. §78aa.

15.     This Court has jurisdiction over each Defendant named herein because each

Defendant is an individual who has sufficient minimum contacts with this District so as to render

the exercise of jurisdiction by the District Court permissible under traditional notions of fair play

and substantial justice.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and § 27 of the Exchange Act because many of the false and misleading statements were made in or issued from this District. In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## THE PARTIES

17.     Plaintiff purchased securities of Wins during the Class Period as set forth in the attached certification hereto and was damaged as a result of Defendants' wrongdoing as alleged in this Complaint.

18.     Defendant Wins is a corporation organized under the laws of the Cayman Islands with principal executive offices purportedly located at 7 Times Square 37th Floor New York, New York 10036.   Notably, however, after various publications questioned the veracity of the Company's principal executive offices in New York, Wins updated its SEC filings to place its principal executive offices in China. During all times relevant hereto, the Company's common stock was traded on the NASDAQ Capital Market under the ticker symbol "WINS."

19.     Defendant Jianming Hao was at all relevant times, the Company's Co-CEO and Chairman of the Board of Directors.

20.     Defendant Renhui Mu ("Mu") was at all relevant times, the Company's Co-CEO, Chief Operating Officer, and a member of the Board of Directors.

21.     Defendant Junfeng Zhao has been the Company's CFO since August 18, 2016 and previously served as its Financial Controller from May 2010 to August 2016.

6

22.     The Defendants identified in ¶¶ 18-21 are sometimes collectively referred to herein as the "Defendants." The Defendants identified in ¶¶ 19-21 are sometimes collectively referred to herein as the "Individual Defendants."

## FALSE AND MISLEADING STATEMENTS

23.     The Company began trading on the NASDAQ on October 29, 2015, and solicited shareholder interest in the offering through a previously filed Prospectus on Form 424B3 (the "Offering Prospectus"), initially filed on September 21, 2015, which contained numerous false and misleading statements. For instance, in the Offering Prospectus, the Company emphasized its "significant growth potential," stating that:

> WFG is an integrated financing solution provider with operations located primarily in Jinzhong City, Shanxi Province, and Beijing, China. WFG's goal is to assist Chinese SMEs, including microenterprises, which have limited access to financing, to improve their overall fund-raising capability and enable them to obtain funding for business development. Based on its due diligence investigations of WFG and the industry in which it operates, including the financial and other information provided by WFG in the course of their negotiations, Sino believes that a business combination with WFG will provide Sino stockholders with an opportunity to participate in a company with significant growth potential.

24.     The Offering Prospectus directly facilitated the Company's public offering and the disclosures and risk factors therein were incorporated by reference into the Company's Third Quarter 2015 Report (defined herein).  In further anticipation of the offering, Defendants issued a press release on October 28, 2015 in which Defendant Hao commented:

> This is an exciting opportunity to take an established company with great market opportunities and leverage its strong balance sheet to take its growth legacy to the next level. ***I'm confident that Wins' strong team with experience in the financial markets, combined with the experience of Sino Mercury's team in growing global businesses and identifying new platform opportunities, will provide significant value for our stockholders***.
>
> This combination of resources ***positions us to make significant progress toward achieving our growth strategy***, building upon our current businesses and exploring new opportunities.

> We believe the strength of our leadership and businesses, coupled with our focus on customer satisfaction and platform expansion, will continue to create value for the customers and employees of Wins.

Emphasis added.

25.     Then, on November 11, 2016, Wins filed a quarterly report for the third quarter of 2015 on Form 10-Q with the SEC ("Third Quarter 2015 Report").  The Third Quarter 2015 Report was signed by Defendant Hao. Therein, the Company falsely represented that the Company maintained adequate internal controls and was in compliance with SEC regulations, stating in relevant part:

> Jianming Hao, the Company's Chairman and Co-Chief Executive Officer, and Peiling (Amy) He, the Company's Chief Financial Officer, after evaluating the effectiveness of the Company's "disclosure controls and procedures" (as defined in Rules 13a-15(e) and 15d-15(e) under the Securities Exchange Act of 1934) as of the end of the period covered by this quarterly report (the "Evaluation Date"), have ***concluded that as of the Evaluation Date the Company's disclosure controls and procedures were effective and designed to ensure that all material information relating to the Company required to be included in reports filed or submitted under the Securities Exchange Act of 1934 is recorded, processed, summarized and reported within the time periods specified in the rules and forms of the Securities and Exchange Commission (the "SEC") and to ensure that information required to be disclosed is accumulated and communicated to the Company's management, including its principal executive and financial officers, as appropriate to allow timely decisions regarding required disclosure***.

> During the period covered by this quarterly report, ***there were no changes in the Company's internal control over financial reporting that have materially affected, or are reasonably likely to materially affect, the Company's internal control over financial reporting***.

Emphasis added.

26.     Yet almost immediately thereafter, on December 15, 2015, the Company filed an Item 3.01 Notice of Delisting or Failure to Satisfy a Continued Listing Rule or Standard on Form 8-K with the SEC.  Therein, Wins disclosed that it had "received a notice from the Listing Qualifications Department of The Nasdaq Stock Market LLC stating that the staff of NASDAQ

has determined that the registrant has not demonstrated that it met the 300 "Round Lot Holder" requirement for initial listing following the completion of the Transactions. Nasdaq Listing Rule 5505(a)(3) provides that there must be at least 300 beneficial holders with ownership of units of 100 shares or more."  Notably, Wins stated that it intended to appeal the decision.

27.     Despite threatened delisting, on December 16, 2015, the Company's Board of Directors voted to increase the monthly compensation of Defendant Hao from $13,000 to $50,000, effective January 1, 2016. Days later, on December 28, 2015, the Company issued an $8.5 million promissory note to Bluesky LLC, an entity controlled by Defendant Hao. The notes bear interest at 4% per year and matured on December 28, 2016. Moreover, the Notes were convertible into the Company's ordinary shares at a price of $12.00 per share.

28.     On December 17, 2015, Wins issued a press release announcing that the Company had executed an aggregate of RMB 49.5 million (US$7.7 million) in direct leasing contracts for tele-medical equipment with seven hospitals located in Shanxi, Shandong, and Xinjiang provinces, beginning in June 2015.  In response to this news, Defendant Mu commented:

> Due to the serious geographical imbalance in distribution of medical resources in China, people in the middle and west of China cannot access high-quality medical care. ***This has resulted in a significant increase in demand for medical equipment in those areas***. Under the Chinese central government's policy of encouraging the development of tele-medicine, this sector has become extremely attractive to the equipment leasing industry, and is a focus for Wins Finance's current and future business development activity. Through cooperation arrangements with leading medical equipment sales and distribution agents, our PRC subsidiary Jinshang has established strong and constructive relationships with hospitals, primarily in the areas of ophthalmology and cardiovascular disease.
>
> By executing these contracts, we have opened the door to the tele-medical equipment leasing sector. As the next step, we are currently in negotiations with hospitals located in Inner Mongolia Autonomous Region and Sichuan and Hebei provinces regarding an additional ten leasing contracts valued at RMB 117 million (US$18 million)]. ***We continue to look for equipment leasing opportunities and clients across China, and are preparing to enter the more developed leasing market in the eastern coastal crescent where we expect to apply our equipment-***

> *purchase-lease-back model, which has proved to be successful in the middle and west of China. We feel that our expansion into this sector will provide positive returns for the Company, and believe that our efforts will lead us to become recognized as a mature, professional, and competitive lease financing provider*.

Emphasis added.

29.     Then, on February 11, 2016, the Company issued a press release announcing a positive NASDAQ Listing Determination.  Specifically, Wins announced that, on February 18, 2016, it was advised that the Nasdaq Listing Qualifications Panel had determined that the Company's ordinary shares would remain listed on NASDAQ. The panel made the decision following the Company's hearing on February 11, 2016.

30.     In a March 10, 2016 quarterly report, summarizing the second quarter financial results ("Second Quarter 2016 Report"), Defendant Hao described the NASDAQ Listing Determination as "transformative," stating in more detail:

> *2015 was a transformative year for Wins Finance highlighted by the business combination with Wins Finance Group Limited and our continued listing on NASDAQ*. The business combination was the first step in our long-term growth strategy focused on value accretive investment opportunities and assets that can be *enhanced through the strategic involvement of Wins' established management team and its familiarity with the Chinese investment community to generate long-term value for shareholders*.

31.     In the Second Quarter 2016 Report, Defendant Hao further described the Company's business prospects as having "declined significantly" despite previously representing that there had been a "***significant increase in demand***," three months earlier. To this end, Defendant Hao stated: "[w]e remain optimistic in our long-term outlook and our ability to identify value. In the near-term however, ***we expect our quarterly results to be impacted by our current exposure to the financial guarantee business in China. Demand for loans from Chinese Small and Medium Enterprise (SME) has declined significantly***…In response to the challenges we are encountering in our guarantee business, we are taking aggressive measures to diversify our

operations to augment our near-term strategy." Emphasis added.

32.     Ten days later, on March 20, 2016, the Company received letters of resignation from two members of its Board of Directors – Bradley Reifler and Nicholas Clements – pursuant to which each resigned from his position as a director of the Company, effective immediately. These resignations were not disclosed to investors until May 20, 2016, two months later, in a Company press release.

33.     On May 27, 2016, Wins announced third quarter 2016 financial results (the "Third Quarter 2016 Report") including that: (i) revenues were $2.5 million, compared to $4.5 million for the comparable period last year; (ii) interest on short-term investments was $3.5 million, compared to $5.4 million for the comparable period last year; and (iii) net income attributable to Wins Finance was $0.2million for the quarter ended March 31, 2016, compared to $8.5 million for the same period ended March 31, 2015. Defendant Mu disclosed that the Company's financial deterioration was due, in part, to the fact that one of the Company's clients had defaulted on a $4.7 million loan, for which the Company had only reserved a $3.2 million provision.

34.     Despite this significant decline, Defendant Mu further emphasized: "[w]e remain optimistic in our long-term outlook. We are focusing our attention on development of our leasing business in the medical equipment and new energy sectors, both of which offer significant opportunities for investment. *We expect these two sectors to continue to grow despite the economic slowdown and other macroeconomic factors. We also expect our pipeline of leasing opportunities to increase during in the first half year, with associated revenues to begin in the second half of 2016*." Emphasis added.

35.     Not long thereafter, on July 25, 2016, the Company's President and member of the Board of Directors, Richard Xu, resigned effective immediately.  Less than a month later, on

August 18, 2016, the Company's then-CFO, Amy He, resigned from her position, effective immediately. Defendant Zhao, who was then the Company's financial controller and member of the Board of Directors, was appointed CFO.

36.     On September 27, 2016, Wins filed its Annual Report on Form 20-F with the SEC, for the fiscal year ended June 30, 2016 (the "2016 Annual Report"). The 2016 Annual Report was signed by the Individual Defendants. The 2016 Annual Report listed the Company's principal executive offices as 7 Times Square 37th Floor New York, New York. Further, the 2016 Annual Report falsely represented with respect the adequacy of the Company's internal controls:

> There were no changes in our internal control over financial reporting (as defined in Rule 13a-15(f) of the Exchange Act) that occurred during the year ended June 30, 2016 that have materially affected, or are reasonably likely to materially affect, our internal control over financial reporting. It should be noted that while our management believes that our disclosure controls and procedures provide a reasonable level of assurance; our management does not expect that our disclosure controls and procedures or internal financial controls will prevent all errors or fraud. A control system, no matter how well conceived or operated, can provide only reasonable, not absolute, assurance that the objectives of the control system are met.

37.     Finally, on January 6, 2017, Wins filed its quarterly report for the first quarter 2017 (the "2017 First Quarter Report"), which was signed by the Individual Defendants. The 2017 First Quarter Report listed the Company's principal executive offices as 7 Times Square 37th Floor New York, New York. With respect to the 2017 First Quarter Report, Defendant Mu represented: "In the past year, we have made progress in our direct leasing business in the medical equipment and new energy sectors…We remain focused on development of our leasing business in these sectors, both of which offer *significant opportunities for investment*. *We expect these two sectors to continue to grow despite the economic slowdown and other macroeconomic factors*. We continue to expand our pipeline of leasing opportunities, and *expect our geographic footprint to increase during in the second half of 2017*." Emphasis added.

38.     The above statements were each materially false and misleading because, among other reasons, Wins:  (i) did not maintain a U.S. headquarters; (ii) had intentionally mire presented its headquarters to gain inclusion on the Russell indexes; (iii) was not in compliance with SEC regulations;  and (vii) failed to maintain adequate internal controls.

## THE TRUTH IS REVEALED

39.     On December 9, 2016, *SeekingAlpha.com* published an article entitled "Wins Finance Holdings is Overvalued: 75% Downside" which criticized the Company's valuation and trading levels as "absurd" and noted "the management team has a track record of shareholder destruction."  The article further revealed that Defendant Hao had previously been accused of market manipulation. On this news, the Company's stock price declined approximately 36 percent from a closing price of $172.51 on December 8, 2016 to close at $110.62 per share on December 12, 2016.

40.     Shortly thereafter, on February 2, 2017, *SeekingAlpha.com* published a second article entitled "Potential Chinese Fraud – Wins Finance Holdings" which criticized the Company's management and their histories of involvement in past incidence of securities fraud. In reaction to the article, the Company's stock price declined approximately 10 percent from a closing price of $345.00 on February 2, 2016 to close at $309.99 per share on February 6, 2016.

41.     This *SeekingAlpha* article was soon followed by a March 30, 2017 article on Bloomberg entitled "This Chinese Stock Soared 4,500% on Nasdaq and No One Knows Why." The article revealed that Wins' purported Times Square headquarters were non-existent. In addition, the article revealed that the Company's largest shareholder, Freeman FinTech Corp., had previously been accused of and sanctioned for market manipulation.

42.     Also on March 30, 2017, *SeekingAlpha* published a third article entitled "Wins

Finance – Active SEC Investigation and Manipulation of A Russell Index." The article explosively revealed, *inter alia* that: (i) the Company was currently under investigation by the SEC; and (ii) the Company had misrepresented its U.S. headquarters to gain inclusion on the Russell indexes.

43. In reaction to these articles, the Company's stock price declined approximately 48 percent from a closing price of $280.60 on March 29, 2017 to close at $144.99 on March 31, 2017.

## LOSS CAUSATION

44. During the Class Period, as detailed herein, Defendants: (i) made false and misleading statements, (ii) engaged in a scheme to deceive the market, and (iii) engaged in a course of conduct that artificially inflated the price of Wins securities and operated as a fraud or deceit on Class Period purchasers of Wins securities by misrepresenting the Company's business and prospects. Later, when Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of Wins securities fell precipitously, as the prior artificial inflation came out of the price over time. As a result of their purchases of Wins securities during the Class Period, Plaintiff and other members of the Class (as defined herein) suffered economic loss, i.e., damages, under the federal securities laws.

## FRAUD-ON-THE-MARKET DOCTRINE

45. At all relevant times, the market for Wins securities was an efficient market for the following reasons, among others:

46. Wins securities met the requirements for listing, and was listed and actively traded on the NASDAQ stock exchange, a highly efficient and automated market;

47. Wins filed periodic reports with the SEC and the NASDAQ;

48. Wins regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national

circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

49.     Unexpected material news about Wins was rapidly reflected and incorporated into the Company's stock price during the Class Period.

50.     As a result of the foregoing, the market for Wins securities promptly digested current information regarding Wins from all publicly available sources and reflected such information in the prices of the securities. Under these circumstances, all purchasers of Wins securities during the Class Period suffered similar injury through their purchase of Wins securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

51.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Class Action Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Wins who knew that the statement was false when made.

## CLASS ACTION ALLEGATIONS

52.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of all persons who purchased or otherwise acquired Wins securities during the Class Period (the "Class").  Excluded from the Class are Defendants and their families; the officers and directors of the Company, at all relevant times, and members of their immediate families; and Defendants' legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

53.     The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court. The Securities were actively traded on the NASDAQ during the Class Period.  Pursuant to SEC filings, as of June 30, 2016, Wins has over 20 million shares of common stock issued and outstanding, held by hundreds, if not thousands, of persons.

54.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

(a)   Whether the Exchange Act was violated by Defendants;

(b)   Whether the Defendants omitted and/or misrepresented material facts;

(c)   Whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)   Whether Defendants knew or deliberately disregarded that their statements were false and misleading;

(e)   Whether the price of Wins securities was artificially inflated; and

(f)   The extent of damage sustained by Class members and the appropriate measure of

16

damages.

(g)   Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

55.   Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

56.   Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel who are experienced in class actions securities litigation.  Plaintiff has no interests which are antagonistic to, or in conflict with those of the Class.

57.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

**COUNT I**
**Against Defendants for Violation of Section 10(b) of the**
**Exchange Act and SEC Rule 10b-5**

58.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

59.   This claim for relief is asserted by Plaintiff under and pursuant to Section 10(b) of the Exchange Act, 15 U.S.C. §78j(b), and SEC Rule 10b-5, promulgated thereunder, 17 C.F.R. 240.10b-5, on behalf of the Class against all Defendants.

60.   During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

61.   Defendants violated Section 10(b) of the Exchange Act and SEC Rule 10b-5, promulgated thereunder, in that they:

17

(a)   employed devices, schemes, and artifices to defraud;

(b)   made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)   engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiffs and others similarly situated in connection with their purchases of Wins securities during the Class Period.

62.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for Wins securities.  Plaintiffs and the Class would not have purchased Wins securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

63.     This action was filed within two years of discovery of the fraud and within five years of each plaintiff's purchases of securities giving rise to the cause of action.

## COUNT II
### Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act

64.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

65.     This claim for relief is asserted by Plaintiff under and pursuant to Section 20(a) of the Exchange Act, 15 U.S.C. §78t(a), on behalf of the Class against all Defendants.

66.     The Individual Defendants acted as controlling persons of Wins within the meaning of section 20(a) of the Exchange Act.   By reason of their positions with the Company, the Individual Defendants had the power and authority to cause Wins to engage in the wrongful conduct complained of herein.  The Individual Defendants controlled Wins and all of its employees.  By

reason of such conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act

67.     As a direct and proximate result of the Individual Defendants' wrongful conduct, Plaintiff and members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

68.     This action was filed within two years of discovery of the fraud and within five years of plaintiff's purchases of securities giving rise to the cause of action.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.     Declaring this action to be a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and certifying Plaintiff as a representative of the Class;

B.     Awarding Plaintiff and the members of the Class damages, including interest;

C.     Awarding Plaintiff reasonable costs and attorneys' fees; and

D.     Awarding such other relief as the Court may deem just and proper.

**JURY DEMAND**

In accordance with Fed. R. Civ. P. 38(b), the plaintiff demands a jury trial of all issues involved, now, or in the future, in this action.


Dated:  April 4, 2017                              /s/ *Shannon L. Hopkins*

 

**LEVI & KORSINSKY LLP**
Shannon L. Hopkins (SH-1887)
Meghan Daley
733 Summer Street, Suite 304
Stamford, CT 06901
Tel.: (203) 992-4523
Fax: (212) 363-7171
Email:  shopkins@zlk.com
Email: mdaley@zlk.com

19

_____
*Counsel for Plaintiff*